United States Bankruptcy Court
Southern District of Texas
**ENTERED**
May 16, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 21-33133 |
| **S&M DISTRIBUTORS, INC.,** § | |
| § | |
| Debtor. § | |
| § | |
| § | **CHAPTER 11** |

### MEMORANDUM OPINION

On March 25, 2022, Rio Grande Food Products, Inc. ("Rio Grande") filed a Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C §503(b)(3)(a) and (b)(4) (ECF No. 72) for the attorneys' fees incurred for filing the involuntary petition that started this case. The debtor opposed a substantial portion of its recovery. The Court sustains the objection in part.

### BACKGROUND

On September 27, 2021, a Chapter 7 Involuntary Petition was initiated against the debtor, S&M Distributors, Inc. (hereinafter "debtor" or "S&M") by petitioning creditor, Rio Grande Food Products, Inc. (hereinafter "Rio Grande"). Rio Grande had obtained a judgment in the United States District Court for the Southern District of Texas in the amount of $558,962.03. Its counsel in that litigation was Morgan, Lewis & Bockus, LP and its local counsel in this bankruptcy case, Kane Russell Coleman Logan, P.C.

In the District Court litigation on October 16, 2018, Rio Grande Food Products, Inc., petitioner, brought an action against S&M Distributors, Inc. in the United States District Court of the Southern District of Texas in case styled as *Rio Grande Food Products, Inc., versus S&M Distributors, Inc*., Civil Action 4:18-cv-03831 for trade dress infringement, false advertising, false designation of origin, unfair competition, misappropriation of goodwill, and unjust enrichment.

Rio Grande alleged to be the exclusive distributor of products made by Lido, S.A. de C.V. sold under the LIDO brand in the United States. Prior to 2018, S&M purchased LIDO products from Rio Grande and distributed those products in the United States. In February 2018, S&M stopped purchasing LIDO products from Rio Grande and began purchasing LIDO products from a company known as 503. Rio Grande brought the district court action in an effort to curtail the importation of gray market goods by S&M.

On December 14, 2018, defendants Cyclone and S&M filed a motion to consolidate cases.[1] The motion was granted, and the case was consolidated and styled as *Rio Grande Food Products, Inc., versus Cyclone Enterprises, Inc, and S&M Distributors, Inc.*, Civil Action 4:18-cv-03265.

---
[1] Case 18-cv-03625, Docket 22

For a period of time, the debtor S&M vigorously pursued discovery in the district court action, including serving written discovery on Rio Grande, deposing key witnesses, and filing a motion for summary judgment.[2]

On June 18, 2020, S&M failed to appear for a Rule 30(b)(6) deposition, violating the District Court's order permitting Rio Grande to depose S&M. S&M failed to provide an excuse for why it was not be available for deposition. On June 25, 2020, counsel for S&M filed a Motion to Withdraw as Counsel, citing as the basis "S&M has failed to respond to numerous attempts by attorneys to communicate with it for several months" and that S&M had not paid for legal services since December 2019.[3]  On July 10, 2020, the district court entered an order granting the motion to withdraw,[4] and no other counsel entered an appearance on behalf of S&M.

As a result of the failure to participate, the District Court issued Judgment[5] on October 14, 2020, ordering S&M to pay $177,985.00 for its trademark infringement, false designation of origin, and false advertising relating to its sale of the grey market Lido Brand products. S&M was further ordered to pay $280,567.00 for its trade dress infringement of the Rio Grande Trade Dress, and attorney's fees in the amount of $153,951.40.  S&M was permanently enjoined from (a) selling, offering for sale, or importing Lido Brand products obtained from a source other than Rio Grande in the United States, (b) selling or offering for sale tamales in the Oriente packaging, (c) using the Rio Grande trade dress, (d) using a trade dress that is confusingly similar to the Rio Grande trade dress, (e) stating or implying that Rio Grande is not the exclusive distributor of Lido Brand products in the United States.

On July 26, 2021, a Writ of Garnishment[6] was issued allowing Rio Grande to recover from Chase Bank the sum of $52,791.37 from the funds of S&M Distributors.  No other action has since been taken in the district court case, all of which was the prelude to the filing of the involuntary case.

At the initiation of the involuntary petition a summons[7] was issued to the debtor on the involuntary petition, no answer was filed, and a default order for relief was entered on the involuntary petition. However, between the issuance of the summons and the Order granting relief, the Court received correspondence[8] from Santos Basilio Contreras, the principal of the debtor. The debtor remained unrepresented and failed to legally respond to the summons until January 19, 2022, when counsel appeared[9] for the debtor.  Thereafter, counsel sought by various motions[10] to collaterally attack the default order of relief, which had already become final and non-appealable.

---

[2] Case 18-cv-03625, Docket 46

[3] Case 18-cv-03625, Docket 114

[4] Case 18-cv-03625, Docket 119

[5] Case 18-cv-03625, 126

[6] Case 18-cv-03625, ECF No. 144

[7] As the Court explained during the hearing, it is aware of the difficulties that counsel experienced obtaining a summons in this case.  Involuntary cases are not usual fare for the Clerk's office and the issuance was difficult.  The Court therefore has been generous in the allowance of time for this process, which at least on paper looks like it took an inordinate and therefore unrecoverable amount of time.

[8] ECF Nos. 6 and 11.

[9] ECF No. 20.

[10] ECF No. 23, 24, 26.

These attempts were universally unsuccessful and ultimately the debtor converted this case to Chapter 11.[11]  The applicant Rio Grande now seeks an award of attorney's fees and costs totaling $48,964.94 as an administrative expense.[12]

The involuntary petition was filed on September 27, 2021, and an order of relief was entered by the Court on December 13, 2021.[13]  As set forth above, the debtor then obtained counsel, who filed numerous pleadings, including an answer,[14] a motion to set aside the order for relief,[15] and a motion to dismiss.[16]

## LEGAL STANDARD

Under the American Rule, each party pays its own attorney's fees arising out of litigation. An exception exists when specific authority is granted by statute, or a contract states otherwise.[17] In this case attorney's fees are recoverable under 11 U.S.C § 503(b)(3)(a) and (b)(4).[18]  The applicant's counsel in the previous litigation was Morgan, Lewis & Bockus, LP ("Morgan") and local counsel, Kane Russell Coleman Logan, P.C. ("Kane").  As part of its efforts to collect on the judgment, Rio Grande continued to use both firms for the involuntary petition, especially since Kane employs experienced bankruptcy counsel.

Kane is requesting fees for services rendered from August 1, 2021, through February 28, 2022, which includes time through the hearing and ruling on the motion to dismiss, in the amount of $32,693.50 and expenses of $1,450.94, totaling $34,144.44.  Morgan is requesting fees for services rendered from August 1, 2021, through March 1, 2022, in the amount of $12,620.50.  Morgan is not requesting any reimbursement of expenses.  After hearing, and the evidence admitted, the Court grants an administrative claim as follows.

## ANALYSIS

Applicant seeks reimbursement of its attorneys' fees and expense under 11 U.S.C. § 503(b) which allow administrative claims for the actual, necessary expense incurred by a creditor that

---

[11] ECF No. 57, 58, 60.
[12] ECF No. 72.
[13] ECF No. 14.
[14] ECF No. 24.
[15] ECF No. 21.
[16] ECF No. 23.
[17] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 441 L.Ed2d 141 (1975).
[18] After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
 (A) a creditor that files a petition under section 303 of this title;…
(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

files a petition under section 303.[19] In general, the date of entry of the order for relief is the cut-off for administrative expenses based on the commencement of an involuntary bankruptcy, unless the Court approves additional employment.[20] However, courts have found that counsel in some circumstances may recover fees and expenses after entry of the order for relief pursuant to 11 U.S.C. § 503(b)(3)(D) if the creditor makes a substantial contribution to a chapter 11 case.[21]

## STANDARDS FOR REASONABLE ATTORNEYS' FEES

The Court has an independent duty to review fee applications, notwithstanding the absence of objections by the United States Trustee, creditors, or any other interested party.[22] Here, the debtor filed an objection on April 15, 2022 (ECF No. 97) requesting that the court reduce the fees and expenses sought by Rio Grande Food Products, Inc., stating that the requested fees were excessive, unreasonable, and for services rendered after the order of relief was entered. The Supreme Court has held that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney fees under federal statutes which provide for such fees.[23] The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.

The Morgan firm is located in Washington D.C. and its counsel billed as follows:

Jane Wise, Associate, $625/hour from 8/2/21 until 12/28/21, then $695/hour beginning 1/12/22.
J. Kevin Fee, Partner, $995/hour from 11/29/21 until 12/7/21, then $1,050/hour beginning 1/12/22.

The Kane firm is located in Houston, Texas and its counsel billed as follows:

Michael Ridulfo, Director, $550/hour from 8/2/21 until 12/21/21, then $575/hour beginning 1/6/2022.
R. Hale Neilson, Associate, $300/hour.
Theresa Garcia, Paralegal, $260/hour.
Reuel Coles, Paralegal, $195/hour from 8/4/21 until 12/13/21, then $225/hour beginning 1/12/22.

The first step in the lodestar method is to evaluate the time entries submitted by the Applicant and determine which are allowable. This step involves considering whether the services which the Applicant billed were reasonable or necessary.

---

[19] 11 U.S.C. § 503(b)(3(A).
[20] *In re Indian Motorcycle Apparel and Accessories Co.*, 174 BR. 659, 662 (Bankr. D. Mass. 1994).
[21] I*n re New Towne Development Group, L.L.C*., No. 09-10029,2010 WL 1451480 (Bankr. M.D. La. April 9, 2010) (internal citations omitted).
[22] *In re Busy Beaver Building Centers*, 19 F.3d 833 (3rd Cir. 1994). See also *In re Gulf Consol. Services, Inc.,* 91 B.R. 414 (Bankr. S.D. Tex. 1988); 11 U.S.C. § 330(a)(1); Fed. R. Bankr. P. 2016.
[23] See, e.g., *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987) (lodestar method used to calculate fees under Clear Air Act); *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (lodestar method used to calculate fees under 42 U.S.C. § 1988).

After determining the lodestar fee, this Court may consider, in its discretion, whether the resulting lodestar amount should be adjusted upward or downward to account for factors not considered during the lodestar calculation.[24] In assessing whether an adjustment is appropriate, the Court may consider, among other factors, the twelve Johnson factors[25] which include: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases." Aside from these twelve factors, the Court may also "consider all relevant factors" in making any adjustment to the lodestar fee.[26]

## OTHER RELEVENT FACTORS EVALUATED BY THE COURT

The Court has made certain inferences and conclusions based on the record in this case. They provide background and clarity for the Court's findings herein. They are discussed chronologically below.

The litigation in the United States District Court was complicated and vigorous until such time as the debtor (via its principal Santos Basilio Contreras) became unrepresented. Thereafter, however, as the debtor was unrepresented, the litigation in the District Court and the order for relief entered in this case were basically default judgments. The debtor's principal finally retained counsel in this involuntary case, but he was not a novice to litigation. He had actively participated in the District Court suit until such time as he determined that he would not participate. This the Court finds was intentional, and his intentional non-participation continued until such time as he because aware of the difficulties and detrimental outcome [at least to him] of the involuntary Chapter 7 case. The negative outcomes to him personally became more than evident and he then became an active participant in the bankruptcy. The Court believes that if the principal had not been dragged to Court, he would have chosen not to participate in the involuntary bankruptcy case. Therefore, the principal and debtor's difficulties can be directly attributed to his intentional non-participation and what has occurred to this point is clearly his responsibility.

Conversely, the litigation between what is effectively a two-party case became much less vigorous once Rio Grande was in litigation with a non-participating party. As the Court has reviewed the billing, the Rio Grande parties bill post non-participation by the debtor and his principal as if they were involved in hotly contested litigation, when this was not the case.

Involuntary cases are not rote in the lexicon of Bankruptcy Practice, however, if one reviews the filings in this case certain things become evident. First, the petition is a simple three-page form. The filings between the petition and the order for relief are not complicated and one could argue that in certain instances not necessary. The Court notes that it routinely resolves issues regarding non-individual debtors who attempt to file bankruptcy cases or pleadings unrepresented.

---

[24] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 655 (5th Cir.2012).
[25] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir.1974).
[26] *In re Woerner,* 783 F.3d 266, 277 (5th Cir. 2015).

The Court actively polices these parties and routinely disallows this from occurring. It appears that unnecessary time was expended in obtaining what should have been a not overly complex default on the involuntary petition. Billing hours should be reduced on this basis.

Hourly rates of the type charged by the intellectual property and trademark Morgan firm located in Washington D.C. are not regularly charged for most types of bankruptcy cases in Houston, Texas. While hourly fees of a rate approaching $1000 per hour are routinely approved in complex Chapter 11 cases in the Southern District of Texas, this litigation pales in comparison and therefore hourly rates must be adjusted downward. This is equally true of paralegal rates, which as charged by the Kane firm exceed even the highest rates awarded by this Court for paralegal work. A $260 per hour paralegal rate meets the associate hourly rate charged by creditor lawyers in most consumer bankruptcy cases before this Court. Again, the Court sees fit to reduce these hourly rates.

Lastly, the Court notes that it is granting substantial attorney fees as an administrative expense post-order for relief based on the debtor's collateral attacks on the non-appealable order. As stated, the Court considers these services to be substantial in their contribution to this Chapter 11 case since if not for these services, this bankruptcy case may have been dismissed or otherwise resolved in a manner detrimental to their client and other possible creditors. Additionally, the Court must note that debtor's counsel filed pleadings that given the final non-appealable status of the order for relief, appeared not well reasoned. Still further her overly aggressive litigation stance required lengthy Court time for all the parties which greatly increased the administrative fees awarded herein. The Court concludes that in part, the debtor is objecting to fees that counsel for the debtor helped to create by lengthy hearings that could, in the Court's opinion, been handled much more time effectively.

## PETITIONING CREDITOR'S CLAIM

The Court finds that the record reinforces the presumption under Section 503(b) that the involuntary petition benefitted the debtor's creditors, and the requested fees and expenses are related to the involuntary case. In addition, the Court has considered whether additional fees and expenses are allowable after the order for relief was entered under Section 503(b)(3)(D) and (b)(4) as a substantial contribution by adding worth to the estate. The Court finds that they are. Therefore, the remaining issue is whether the applicant's fees and expenses are reasonable under the lodestar analysis.

First, the Court will generally not compensate for time that is 'lumped' together in a fee application. In an effort to determine whether time spent on an activity was reasonable, multiple services performed cannot be "lumped" under one time entry.[27] A proper fee application must list each activity separately. Based on this information, the court then makes a determination concerning reasonable compensation. Therefore, it is important that the applicant itemize each activity by date. In assessing reasonable compensation, time entries cannot be vague with respect

---

[27] *In re Pettibone*, 74 B.R. at 307; *In re Amatex Corp.*, 70 B.R. 624, 627-628 (Bankr. E.D. Pa. 1985).

to time expended on each individual task, and/or cannot be bundled. Both Kane and Morgan submitted invoices which contain numerous entries of lumping services together.[28]

Further, the services performed must be legal in nature, rather than clerical. This application contains many instances of the applicant's billing for work which is routinely performed by secretaries and should not be billed to the client. Case law suggests that "ministerial tasks" (typing, file organization, document preparation, searching or filing documents on PACER, etc.) performed by a professional or paraprofessional should not be allowed as a separate charge because it is part of the office overhead, which should already be built into the counsel's hourly rate.[29]  The instant fee application contains several instances where counsel billed for clerical tasks.[30]

Further still, billing entries may not contain excessive or unreasonable hours.[31]  For example, Kane counsel billed a total of 3.40 hours for the motion requesting attorney's fees. Kane and Morgan counsel also billed for work on matters not involving the involuntary action, both before it was filed and after the motion to dismiss was denied.[32]  Such hours will be reduced, as they were not reasonably expended.

Moreover, there are multiple entries for interoffice communication. Fees for interoffice communications are allowed provided there are not an inordinate number of them, and so long as multiple attorneys do not bill for the same conference.[33] Here, the record reflects that counsel routinely billed for attorney conferences between the two firms, including some time where two attorneys billed for the same work.[34] The Court reduces the fees by for these conferences. Lastly,

---

[28] See Morgan's entries (ECF No. 119-2) dated 8/3/21(1.10 $687.50), 9/9/21 (.70 $437.50), 10/25/21 (.20 $125.00), 11/29/21 (.10 $62.50), 12/1/21 (.40 $250.00), 12/13/21 (.40 $250.00), 1/12/22 (.30 $208.50), 1/25/22 (.80 $556.00 and .90 $945.00), 2/7/22 (.60 $417.00), 2/9/22 (.30 $208.50), 2/15/22 (.90 $625.50), and 2/22/22 (.80 $556.00), **totaling** $5,329.00. See Kane's entries (ECF No. 119-3) dated 8/10/21 (not billed), 8/11/21 (3.00 $1,650.00), 9/9/21 (.40 $78.00), 9/14/21 (.70 $182.00), 9/27/21 (1.40 $364.00), 9/28/21 (1.00 $260.00), 9/29/21 (.20 $52.00), 10/11/21 (.20 $39.00), 10/19/21 (.20 $39.00), 10/26/21 (.30 $78.00), 10/29/21 (.30 $165.00), 11/9/21 (.40 $220.00), 11/16/21 (.80 $440.00), 12/10/21 (1.50 $825.00), 1/12/22 (.20 $45.00), 1/25/22 (1.70 $977.50), 1/26/22 (.20 $45.00), 2/16/22 (.70 $157.50), 2/17/22 (.20 $115.00), 2/18/22 (.70 $157.50), 2/23/22 (5.50 $3,162.50), 2/24/22 (.20 $115.00), 2/25/22 (.50 $287.50), 3/2/22 (.20 $45.00), 3/3/22 (.20 $45.00), and 3/16/22 (.40 $230.00) **totaling** $9,774.50.
[29] *In re Dimas*, LLC, 357 B.R. 563, 577 (Bankr. N.D. Calif. 2006).
[30] See Kane's entries (ECF No. 119-3) dated 8/10/21 (1.10 $286.00), 9/14/21 (.70 $182.00), 9/29/21 (.20 $52.00), 10/11/21 (.20 $39.00), 10/19/21 (.20 $39.00), 10/26/21 (.30 $78.00), 11/16/21 (.80 $440.00), 12/10/21 (.10 $19.50), 12/13/21 (.30 $58.50), 1/12/22 (.20 $45.00), 1/19/22 (.20 $45.00), 1/25/22 (.90 $202.50), 1/26/22 (.20 $45.00), 2/2/22 (.50 $113.00), 2/9/22 (.20 $45.00), 2/18/22 (.70 $157.50), 2/21/22 (1.40 $315.00), 2/22/22 (.60 $135.00), 2/24/22 (.30 $67.50), 3/2/22 (.20 $45.00), 3/3/22 (.20 $45.00), 3/18/22 (.10 $22.50), 3/30/22 (.30 $67.50) and 3/31/22 (.20 $45.00) **totaling** $2,589.50.
[31] *In re Skyport Glob. Commc'ns, Inc.,* 450 B.R. 637, 651 (Bankr. S.D. Tex. 2011),
[32] See Morgan's entries (ECF No. 119-2) dated 8/2/21 (.10 $62.50), and 3/2/22 (.30 $315.00) **totaling** $377.50. See Kane's entries (ECF No. 119-3) 8/4/21 (1.00 $195.00), 8/4/21 (.60 $117.00), 9/9/21 (.40 $78.00), 2/16/22 (.70 $157.50), 2/24/22 (.20 $115.00), 2/25/22 (.50 $287.50), 3/2/22 (.90 $517.50), 3/2/22 (.20 $45.00), 3/3/22 (.20 $45.00), 3/15/22 (.20 $115.00), 3/17/22 (.20 $115.00), 3/18/22 (.10 $22.50), 3/22/22 (.20 $115.00), 3/23/22 (.20 $115.00), 3/25/22 (.50 $287.50), 3/28/22 (.20 $115.00), 3/29/22 (3.00 $1,725.00), 3/29/22 (.20 $45.00), and 3/30/22 (.30 $67.50) **totaling** $4,280.00.  Kane counsel testified that as set forth in the motion at ECF No. 72, page 5, the entries on 8/2/21, 8/10/12, and 9/9/21 were on the invoice, but not included in the total time requested.
[33] *In re Lopez*, 576 B.R. 84 (Bankr. S.D. Tex. 2017).
[34] See Morgan's entries (ECF No. 119-2) dated 9/9/21 (.70 $437.50), 10/25/21 (.20 $125.00), 11/9/21 (.10 $62.50), 12/1/21 (.40 $250.00), 12/13/21 (.40 $250.00), 1/12/22 (.30 $208.50), 1/25/22 (.80 $556.00), 2/2/22 (.30 $208.50),

there are instances where two attorneys from Morgan conferred.[35] The court will adjust the claim to delete the double billing.

The Court should not have to guess or spend excessive time to justify a fee for an applicant who has not provided sufficient information. The Court is not required to audit time records in order to determine what was reasonable, what was necessary, and what the result was for each endeavor.[36] Rather than implementing reductions on a "line-by-line" basis, and without expending extensive court resources to track down every entry and make a line-by-line disallowance of insufficiently substantiated entries, one court has taken a "rough justice" approach, which this Court adopts.[37]

Based on the reasons above, and its review of the lodestar factors, the Court finds the applicant is entitled to compensation as an administrative claim, however, reduces the award for those entries that are insufficiently substantiated, those that were for secretarial tasks, those that were excessive, and those that were duplicative. Following the dictates of the *Johnson* factors, this court finds that the customary hourly rates in Houston, Texas are as follows:

For the Morgan firm:

Jane Wise, Associate, $400 per hour
J. Kevin Fee, Partner, $575 per hour

The Kane firm:

Michael Ridulfo, $550 per hour.
R. Hale Neilson, Associate, $275 per hour.
Theresa Garcia, Paralegal, $160 per hour.
Reuel Coles, Paralegal, $150 per hour

The Court, therefore, reduces all hourly rates accordingly. Still further after review, the Court for the reasons so stated, reduces the Morgan firm's hours by 45% or 7.6 hours and awards $4,252.19[38] As to the Kane firm, it disallows 10.10 hours for secretarial tasks totaling $2,589.50,

---

2/9/22 (.30 $208.50), 2/14/22 (.20 $139.00), 2/15/22 (.90 $625.50), 2/22/22 (.90 $945.00 and .80 $556.00), and 2/23/22 (.10 $69.50) **totaling** $4,641.50. See Kane's entries (ECF No. 119-3) 9/9/21 (.60 $330.00), 9/14/21 (.70 $182.00), 9/27/21 (1.40 $364.00), 11/9/21 (.40 $220.00), 12/1/21 (.30 $165.00), 12/9/21 (.10 $30.00), 12/10/21 (1.20 $360.00), 12/13/21 (.20 $110.00), 12/21/21 (.20 $110.00), 1/12/22 (.20 $115.00), 1/25/22 (.90 $518.00), 2/2/22 (.40 $230.00), 2/8/22 (.20 $115.00), 2/15/22 (.30 $173.00), 2/23/22 (5.00 $1,125.00), 2/25/22 (.50 $287.50), and 3/31/22 (.20 $115.00) **totaling** $4,549.50.

[35] See Morgan's entries (ECF No. 119-2) dated 1/25/22(.90 $945.00 and .80 $556.00), 2/14/22 (.30 $315.00), 2/15/22 (.30 $315.00), 2/22/22 (.90 $945.00), and 2/25/22 (.20 $210.00) **totaling** $3,286.00.

[36] *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 736 (Bankr. N. D. Ill. 1988).

[37] *In re Bank of New England Corp*., 134 B.R. 450 (Bankr. E.D.Mass).

[38] The Court notes that the billing for the Morgan firm does not contain an exact reference for time billed between the partner and associates (ECF No. 72-1). Each bill contains a breakdown of total time by partner and associate but also contains a list of unbilled time that is not so summarized. The billings detail 7.9 hours of associate time and .5 hours of partner time out of 16.9 hours billed. The Court estimates the remaining 8.5 hours at 50% partner time and 50% associate time for totals of 12.15 hours of associate time and 4.75 hours of partner time. 12.5 x $400 =$5000, 4.75 x $575 = $2731.25, total of $7,731.25, reduced by 45% to $4,252.19.

and disallows the balance billed by 35% or $6,511.40 and awards a total of $23,593.00. Therefore, the Application is granted, in part, in the total amount of $27,845.19 and all requested expenses in the amount of $1,450.94 for a total award of $29,296.13.

**THEREFORE, IT IS ORDERED** that the Motion for Allowance of Administrative Expense Claim (ECF No. 72) is approved in part and denied in part, and the applicant is awarded an administrative claim in the amount of $27,845.19 and expenses in the amount of $1,450.94 for a total claim of $29,296.13.

SIGNED 05/16/2022

_____
Jeffrey Norman
United States Bankruptcy Judge